<hr/>

### CHICAGO, M. & ST. P. RY. CO. v. MILLS.

(Circuit Court of Appeals, Seventh Circuit. April 11, 1911.)

#### No. 1,689.

MASTER AND SERVANT (§ 286*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—DANGEROUS PLACE TO WORK.

Plaintiff's intestate was employed by defendant railroad company about an elevated coal chute, for coaling engines, in helping to unload cars, which were drawn up an inclined track by a cable, and, when unloaded, were allowed to run down by gravity. There was a spring switch in the track, so adjusted that the ascending car would open it, after which it would automatically close, so as to run the descending car onto a track used for empties. Plaintiff's intestate had assisted in unloading a car which was at the chute in the morning, and had gone down to fix another car to pull up, when the empty car ran over the switch upon the loaded track, and struck and killed him. The switch was set wrong, and had probably been tampered with; there being a lever by which it could be so set that it would not operate automatically. *Held*, that the failure

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of defendant to keep it locked, or otherwise so equipped as to prevent its being tampered with, rendered the place an unsafe place to 'work, and that the case was properly submitted to the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1010–1050; Dec. Dig. § 286.*] ·

In Error to the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois.

Action by Wiley W. Mills, administrator of the estate of Kaspar Strojny, deceased, against the Chicago, Milwaukee & St. Paul Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

The writ of error is to a judgment upon the verdict of a jury, in a personal injury case, finding the plaintiff in error guilty of negligence, as charged in the declaration, and assessing the defendant in error's damages at $4,000. The principal assignment of error relied upon is that the trial court refused, at the close of all the evidence, to instruct the jury to find for plaintiff in error. The other assignments of error are merely incidental to this, and disposed of by the same considerations.

The facts are stated in the opinion.

O. W. Dynes, for plaintiff in error.
J. J. Neiger, for defendant in error.

Before GROSSCUP and BAKER, Circuit Judges, and HUMPHREY, District Judge.

GROSSCUP, Circuit Judge, delivered the opinion.

Defendant in error's intestate, Kaspar Strojny, was struck and killed by a car running down one of the inclined tracks leading from plaintiff in error's railway track to an elevated coal chute for the coaling of locomotive engines. The declaration avers that at this time the plaintiff in error had control of and was using divers inclined railway tracks, leading to the elevated coal bins, which were joined by means of an automatic or "spring" switch; that after a loaded car had been drawn up from the "loaded car track" to such bins and unloaded, it was permitted to run down by gravity to the "empty car track," the switch connecting the two being so adjusted that the ascending car would open it, after which it would automatically close, so as to run the descending car on the track for empties. Strojny, at the time he was killed, was employed by plaintiff in error in and about the coal cars, preparing the loaded cars for the ascent and attaching to them the cable by which they were drawn up. The declaration then avers:

"That it then and there became and was the duty of the defendant (plaintiff in error) to use reasonable care to see that the said automatic or spring switch was so placed and kept as not to endanger the life of said Strojny while he was then and there at work in the performance of his duties, as aforesaid. Yet the defendant (plaintiff in error), wholly regardless of its duty in the premises, by its servants then and there, who, plaintiff (defendant in error) alleges, were not fellow-servants of said Strojny, * * * carelessly, negligently, wrongfully and improperly failed to keep the said switch locked

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

or fastened in such a way that the said descending cars could run only upon the track of 'empties.' "

Besides being an automatic switch, the switch was one that could be operated manually. It had an ordinary handle about twelve inches long, that lay, ordinarily, in a notch about two inches deep. To operate it, so as to set the switch manually upon the other track, this handle had to be lifted out of the notch in which it then lay, turned around, and dropped into the opposite notch of about the same depth. That being done, the switch was no longer operative automatically by the ascending coal cars. On the morning of the accident, a loaded coal car was standing at the bins ready to be unloaded. It was there when the unloaders arrived. When unloaded and ready to be sent down to the track of empties, as the men employed supposed, Strojny went down to fix another car to pull up. This put him on the loaded track. Had the switch been set for the empty track, as it always had been up to that morning, the empty car would have taken the track to the empties and Strojny would have been unhurt. But the switch was set wrong—had probably been tampered with since the loaded car had been brought up, probably the day before. "The switch," as the yard conductor put it, "was in perfect working order, but it was set wrong; that is all. It was not locked, and I don't know that it ever had been locked." Hence the accident.

We think that upon this state of facts, testified to by the witnesses, including the plaintiff in error's yard conductor, there was sufficient evidence to go to the jury to justify them in finding that plaintiff in error "failed to keep the said switch locked or fastened in such a way that said descending cars would run only upon the track for empties." While there is evidence that the signal showed that the switch was set wrong, there was no evidence that this was observed by Strojny, or any of the men there employed until after the accident. The switch in question is an unusual one, was employed in a way entirely different from the customary switches in switch yards, and was attended by dangers not incident to switches in switch yards. In our judgment, it should have been so equipped, either by the absence of any handle, whereby it could be operated manually, or by keeping the handle locked that there could be no tampering with it. In that way it would always have been set "right." Equipped with a handle, as it was, and left unlocked as it was, rendered the place an unsafe place in which to work; and out of this unsafety, inherent in the conditions described, the accident came.

The judgment of the Circuit Court is affirmed.